RALPH M. LENARDSON *vs.* THE HOUSING AUTHORITY OF THE CITY OF PROVIDENCE.

JUNE 29, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Frost, J. This is an original petition for compensation under the workmen's compensation act, general laws 1956, §28-35-12. It was heard by a trial commissioner who entered a decree denying and dismissing the petition. From a decree of the full commission affirming the decree of the trial commissioner, the petitioner has appealed to this court.

The petitioner alleges that in the course of his employment with respondent on June 17, 1957, while tending a furnace or incinerator at 263 Chad Brown street in the city of Providence, he suffered a heat stroke caused by heat emanating from the furnace; that he fell striking his head; and that the injury was caused by or contributed to hemiplegia for which he sought compensation.

At the hearing before the trial commissioner it appeared that petitioner, who was fifty-two years old, had been employed by respondent for about ten years as a maintenance man having specifically the care of several incinerators; that on June 17, 1957 he came to work at 8 a.m. and started

to ignite the rubbish in the incinerators; that he lighted the incinerator in No. 12 building, felt dizzy and wanted to get some fresh air; and that he fell on the stairway and hit his head against the side of the wall. There was testimony that the rescue squad from the fire department and an ambulance from the Rhode Island Hospital were called and that the rescue squad took him home. It also appeared that petitioner had not worked since the incident of June 17, 1957; that on July 28, 1957 he was admitted to St. Joseph's Hospital; and that the final diagnosis at the hospital was cerebral thrombosis with spastic paralysis of the entire left side.

In his appeal to this court petitioner has alleged ten reasons. These may all be disposed of by a determination of two questions: (1) Whether petitioner suffered a heat stroke caused by heat emanating from the incinerator; and (2) whether he struck his head when he fell on the stairway.

According to the record the firebox of the incinerator was about three feet square and rubbish and garbage were in it. The petitioner testified that he had been burning rubbish for about twenty minutes; that he became dizzy with the heat from the fire; that he wanted to get fresh air; that he fell on the stairway and hit his head against the side of the wall; and that he was alone at the time. In cross-examination he testified that he lighted the incinerator, closed the door and felt dizzy. From the evidence the trial commissioner could properly conclude that an appreciable amount of time would be required for the incinerator to give off a noticeable amount of heat.

The evidence discloses that June 17, 1957 was a hot day. However, the testimony indicates that the air in the incinerator room was cooler than the outside air. Common knowledge would indicate this would be so until the incinerator had been in operation for a substantial period. In addition, Dr. Roger G. Berard, the ambulance physician,

testified that it was a warm day and that "they had taken him down to a cellar, basement where it was cool."

Gordon Logan, petitioner's immediate superior, testified that he saw him shortly after he had fallen and there were no bruises on his head or anything to indicate that in falling he had struck his head against the wall. Joseph McGough, manager and in charge of maintenance, who with Mr. Logan saw petitioner, observed no marks on his head. Doctor Berard could not recall that he had found any evidence of a head injury. Doctor Arthur H. Vaughn, petitioner's family physician who attended him in the evening of June 17, 1957, had no written record, but he did not recall receiving any history from petitioner that he had hit his head when he fell.

In our opinion the trial commissioner could fairly conclude from all the evidence that petitioner had failed to prove that he became dizzy from the heat of the incinerator and that he struck his head when he fell.

In addition to the evidence already mentioned tending to prove that petitioner's condition on June 17, 1957 and thereafter did not arise as alleged in his petition, there was evidence strongly tending to prove that petitioner's physical condition was a result of causes wholly outside of his employment.

Mr. Logan testified that petitioner told him on the morning of June 17 that he had been lying out in the sun all the previous day in his shorts drinking highballs. The petitioner admitted lying on his porch but denied drinking highballs and said that he had a glass of beer.

Doctor Berard testified that petitioner was perspiring freely and was flushed and stuporous; that he understood from persons with whom he talked that petitioner had been working outside in the yard; that his diagnosis was heat exhaustion; and that he advised him to return home, stay out of the sun, and take plenty of fluids with some salt added thereto.

Doctor Vaughn testified that he saw petitioner on the evening of June 17; that his diagnosis was heat exhaustion; that he saw him two or three days later; and that while he was improved, he advised him to remain at home and rest and avoid exposure to the sun.

Doctor Wilfred Pickles testified that he examined petitioner on April 29 and May 6, 1958 and obtained petitioner's history from his son. He further testified that from the hospital record he learned that several years ago petitioner had a luetic infection; that four years before the incident of June 17, 1957 he had a small stroke; that he then had the development of his present condition; and that if it could be shown he received a blow on the head, that could be considered a cause for aggravation of the underlying condition.

Doctor Thomas C. McOsker, who examined petitioner on May 17, 1958, testified that "in the absence of any definite history of a severe contusion to his head, that this man had had a stroke before, and that he had a stroke again, and that I felt that he just happened to have it while at work."

In the absence of reasonably satisfactory evidence upon which a finding could be based that on June 17, 1957 petitioner was overcome by heat from the incinerator or that he had hit his head on the wall, and particularly in view of his medical history before and after June 17, the trial commissioner could properly find that petitioner had not proved that he received an injury arising out of his employment.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Needham, Silverstein & LaFazia,* for petitioner.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.